IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03208-KLM

J. A. C.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Social Security Administrative Record** [#6], filed January 25, 2022, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq.  On April 7, 2022, Plaintiff filed an Opening Brief [#10] (the "Brief").  Defendant filed a Response [#11] in opposition, and Plaintiff filed a Reply [#12].  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[1]

**I. Background**

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#7, #13].

1

On April 23, 2019, Plaintiff filed an application for supplemental security income under Title XVI, alleging disability beginning November 4, 2009. Tr. 18.[2] On May 11, 2021, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 30. The ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since April 23, 2019, the application date. Tr. 21.

The ALJ found that Plaintiff suffers from the following severe impairments: (1) degenerative disc disease, disc protrusion, stenosis, and spondylosis of the cervical spine; (2) spondylosis, Scheuermann's disease, and facet arthropathy of the lumbar spine; (3) juvenile osteochondrosis, disc protrusion, and kyphosis of the thoracic spine; (4) chondromalacia of the right patella; (5) primary gout; (6) sleep apnea; (7) opioid dependence; and (8) morbid obesity. Tr. 21. However, the ALJ also found that Plaintiff's impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (416.920(d), 416.925 and 416.926)." Tr. 23.

The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform a "reduced range of light work" with the following limitations:

> [T]he claimant can occasionally lift/carry 20 pounds and frequently lift and/or carry 10 pounds. He can stand and/or walk 2 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and he can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. He can tolerate no more than a moderate noise level. The claimant is further limited [to] no more than frequent exposure to vibration, and he can have no exposure to hazards, including unprotected heights or operating heavy machinery.

---

[2] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 6 through 6-8, by the sequential transcript numbers instead of the separate docket numbers.

Tr. 24. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff was unable to perform any past relevant work but that he was able to perform the representative occupations of photocopy machine operator (DOT 706.684-022), routing clerk (DOT 209.587-034), and office cleaner (DOT 209.687-026). Tr. 29. He therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 29-30. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.     Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.

*See* 20 C.F.R. § 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity."  *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments."  *Id.*  "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities."  *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy."  *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need

not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff argues that the ALJ erred at step five because (1) the ALJ made findings of fact regarding Plaintiff's ability to perform other work which are not supported by substantial evidence and (2) the occupations adopted by the ALJ are not supported by evidence. *Brief* [#10] at 6-12.

**A.  Sitting, Standing, and Walking Limitations**

At step four, the ALJ limited Plaintiff to a reduced range of light work, in part stating that Plaintiff could "stand and/or walk 2 hours and sit 6 hours of an 8-hour workday." Tr. 24. Plaintiff essentially argues that the ALJ's hypotheticals to the VE did not adequately

account for this limitation and/or actually showed that Plaintiff was precluded from engaging in other occupations.

The ALJ first asked the VE to assume, among other things, a hypothetical individual of Plaintiff's age, education, and work history who "can stand and will walk two hours of an eight-hour workday.  Can sit six hours of an eight-hour workday."  Tr. 63.  Based on a question from the VE,[3] the ALJ clarified: "If there – if it's in your experience and opinion there are other light occupations that allow for standing and walking maximum of two hours then I'm – I'm fine with that.  But if you can – if you can expand it, if that's in your experience."  Tr. 64.  The VE then answered the hypothetical, stating:

> Okay.  There's one job in particular that, actually several that I could offer with sit/stand options.  And one would be Small Parts Assembler.  DOT number 706.684-022.  Light duty, SVP of 2.  National 318,034.  Your Honor, I would cut that in half with the assumption that the job could be performed if a stool is provided.  Another job I could offer is Photocopy Machine Operator.  DOT number 207.685-014.  Light duty, SVP of 2.  Nationally 92,913.  And a third job would be Mail Clerk, as in a mailroom.  DOT number 209.687-026.  Light duty, SVP of 2.  Nationally 13,033.

Tr. 64.

The ALJ then asked the VE to assume a second hypothetical individual with the same qualities and limitations, except that "this second individual is further limited to standing and/or walking one hour, can sit for five or six hours, but would need to lie down or recline the remaining one to two hours of an eight-hour workday."  Tr. 65.  The VE responded that such limitations would be "work preclusive."  Tr. 65.

---

[3] The VE's precise question is unclear given that the recording of the telephonic hearing did not permit the transcriber to understand the entirety of the question.  Tr. 64.  The transcript states that the VE said: "With that hypothetical, Your Honor, I believe at a sedentary level, given he could only stand or walk two of eight hours or I would [INAUDIBLE] sit/stand option.  Are you comfortable with that?"  Tr. 64.

7

The ALJ then turned back to the first hypothetical individual and asked: "And you had mentioned that – that these had a sit/stand option, so I'm wondering – I guess if that first individual required a sit/stand option at will, would that change your response to hypothetical number one with those three jobs you cited?"  Tr. 65.  The VE responded: "No, if they were able to stay on task at the work station.  If they had to step away, that would change my answer."  Tr. 65.  The ALJ then said:

> Okay.  And that was my question, so I will find out if that changes your answer.  If it were a sit/stand/walk option at will where the individual had to walk away from the work station, they're not going to be walking in place at the work station, but they move away from the work station to either stretch or walk as needed throughout the course of the day, how would that change your – your testimony for hypothetical number one?

Tr. 65-66.  The VE responded that such a limitation would be "work preclusive."  Tr. 66.

The ALJ then asked: "[I]f hypothetical individual number one required three to four unscheduled breaks throughout the course of the workday of up to 15 minutes in duration, let's say, and these are not – these are not necessarily encompassed by the regularly scheduled breaks, would that change your response to hypothetical number one?"  Tr. 66.  The VE responded that this "would eliminate all employment."  Tr. 66.

Later, in connection with questioning regarding noise level, the VE stated that the small parts assembler position would not be available, and so she provided one additional job: "Routing Clerk.  DOT number 222.587-038, light duty, SVP of 2.  Nationally, 34,822."  Tr. 69.  The ALJ asked regarding this job: "And then, again I'm assuming with this job as well that your experience that the sit/stand option would allow for standing and walking two hours at the light exertion level is still based on your experience then?"  Tr. 69-70.  The VE responded affirmatively.  Tr. 70.

8

To reiterate, the RFC requirement was that Plaintiff could "stand **and/or** walk 2 hours" out of an 8-hour workday. Tr. 24 (emphasis added). By a plain reading of this limitation, the ALJ found that Plaintiff could stand for two hours; **or** walk for two hours; **or** stand *and* walk in some combination for two hours. Thus, the hypotheticals, and the VE's responses, had to account for one (or more) of those three scenarios: two hours of standing, two hours of walking, or two hours of combined standing and walking.

The ALJ did *not* find that Plaintiff was required to walk *at all* during these two hours, but could, alternatively, stand for that amount of time. If the RFC *required* Plaintiff to walk a certain portion of the workday, such a limitation could easily have been fashioned. For example, the ALJ could have stated that Plaintiff should "stand **and** walk 2 hours" of an eight-hour workday. Alternatively, by way of another example, the ALJ could have stated that Plaintiff could sit for six hours of an eight-hour workday, could walk for one hour of an eight-hour workday, and could stand for one hour of an eight-hour workday. *See, e.g.*, *Gutierrez v. Barnhart*, 109 F. App'x 321, 327 (10th Cir. 2004) (discussing *Talbot v. Heckler*, 814 F.2d 1456 (10th Cir. 1987), where the ALJ limited the plaintiff "to walking only two hours in a day, standing only two hours in a day, and sitting only two hours in a day"). However, the ALJ here did not determine that such limitations were the appropriate way to account for Plaintiff's impairments.

In light of this reading of the RFC, the Court cannot find that the ALJ erred in the hypotheticals he provided for the VE's consideration or that the VE's testimony did not align with what ultimately became the RFC limitations in the ALJ's decision. The VE testified that hypothetical individual number one could perform particular jobs available in the national economy where the person could alternate at will between sitting and

9

standing, which fits the RFC that Plaintiff could sit for six hours per workday and stand *or* walk for two hours per workday. In fact, the ALJ specifically found that a "sit/stand" option fit within the parameters of Plaintiff's RFC. Tr. 29. He stated: "[T]he DOT does not specifically address the amount of standing and walking for these light occupations. In her experience, these three light occupations can be performed with standing/walking at 2 hours as they allow for a 'sit/stand option' as she termed it, and I accept her testimony." Tr. 29. The Court agrees with the ALJ regarding this characterization of the VE's testimony and its resonance with the RFC.

Accordingly, the Court finds that the ALJ did not commit reversible error with respect to this issue.

**B.    Representative Occupations**

Plaintiff next argues that the representative occupations adopted by the ALJ at step five are not supported by the evidence. *Brief* [#10] at 11. Defendant agrees that error occurred here but calls it mere "clerical error" or "scrivener's error." *Response* [#11] at 9-10. Thus, the question becomes whether the errors discussed below were harmless. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (holding that harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

As noted above, the VE mentioned four jobs in her testimony: (1) ". . . Small Parts Assembler. DOT number 706.684-022. Light duty, SVP of 2. National 318,034. Your Honor, I would cut that in half with the assumption that the job could be performed if a stool is provided."; (2) ". . . Photocopy Machine Operator. DOT number 207.685-014. Light duty, SVP of 2. Nationally 92,913."; (3) ". . . Mail Clerk, as in a mailroom. DOT

number 209.687-026.  Light duty, SVP of 2.  Nationally 13,033."; and (4) "Routing Clerk. DOT number 222.587-038, light duty, SVP of 2.  Nationally, 34,822."  Tr. 64, 69.

In his decision, the ALJ listed three representative occupations: (1) "Photocopy machine operator (DOT 706.684-022, light, SVP 2).  There are approximately 92,913 of these jobs in the national economy."; (2) "Routing clerk (DOT 209.587-034, light, SVP 2).  There are approximately 18,000 of these jobs in the region and 226,000 in the national economy."; and (3) "Office cleaner (DOT 209.687-026, light, SVP 2).  There are approximately 5,000 of these jobs in the region and 74,000 in the national economy."  Tr. 29.  All three of these representative occupations include one or more clear errors.

First, the photocopy machine operator and the DOT number listed by the ALJ do not match.  The DOT for the photocopy machine operator, as provided by the VE, is DOT 207.685-014.  Tr. 64.  The DOT number provided by the ALJ here, DOT 706.684.022, is actually the number for the small parts assembler job.  Tr. 64.  The number of jobs in the national economy, 92,913, matches the VE's testimony as to the photocopy machine operator job.  Tr. 29, 64.

Second, the routing clerk DOT number listed by the ALJ does not match the number provided by the VE.  *Compare* Tr. 29 (ALJ stating "DOT 209.587-034") *with* Tr. 69 (VE stating "DOT 222.587-038").  The number of jobs in the national economy for this position as noted by the ALJ, 226,000, does not match the VE's testimony of 34,822.

Third, the office cleaner job is not referred to anywhere in the hearing testimony. The DOT number here, 209.687.026, refers to the mail clerk position.  Tr. 64.  The number of jobs in the national economy for this position as noted by the ALJ, 74,000, does not match the VE's testimony for the mail clerk of 13,033.  Tr. 29, 64.

The number of drafting errors here is unfortunate. However, the ALJ repeatedly stated that he was basing his decision on the VE's testimony:

> To determine the extent to which these limitations erode the unskilled light occupational base, *I asked the vocational expert whether jobs exist in the national economy* for an individual with the claimant's age, education, work experience, and residual functional capacity. *The vocational expert testified* that given all of these factors the individual would be able to perform the requirements of representative occupations . . . . Pursuant to SSR 00-4p, *I find the vocational expert's testimony is not inconsistent with the information contained in the Dictionary of Occupational Titles.* However, the DOT does not specifically address the amount of standing and walking for these light occupations. *In her experience*, these three light occupations can be performed with standing/walking at 2 hours as they allow for a "sit/stand option" as she termed it, and *I accept her testimony*.
>
> *Based on the testimony of the vocational expert*, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Tr. 29 (emphases added). Thus, based on the ALJ's decision as a whole, the only reasonable reading of the clerical errors is to find that he meant to list the three occupations and associated DOT numbers provided by the VE: (1) photocopy machine operator, DOT 207.685-014; (2) routing clerk, DOT 222.587-038; and (3) mail clerk, DOT 209.687-026. Tr. 64, 69.

Indeed, any other reading would be patently unreasonable. As the parties agree, there was no discussion of an "office cleaner" position at the hearing. DOT 209.587-034 refers to a "marker" position, also known as a "marking clerk" or "merchandise" position. Again, there was no discussion of this type of position at the hearing. It is also clear from the hearing that the ALJ accepted the photocopy machine operator and mail clerk positions but rejected the small parts assembler position based on noise levels associated with that position. Tr. 69. When these three obvious mistakes are eliminated, the three

remaining occupations, all of which are referenced in some form in the ALJ's decision, are photocopy machine operator, routing clerk, and mail clerk  Tr. 29.

Plaintiff has not shown that the ALJ erred by relying on these three occupations. For example, Plaintiff has not argued that these jobs do not exist in significant numbers in the national economy.  To the extent Plaintiff may be arguing that some are not available to him because they do not adequately provide for a walk option, the Court has addressed that issued in Section III.A. above.  In short, Plaintiff has not shown that the ALJ committed harmful, and therefore reversible, error here.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant and close this case.

Dated: March 6, 2023

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge